# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTHONY CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV699 |
| | ) | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND RECOMMENDATION</u>**
**<u>OF UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff, Anthony Chapman, brought this action in state court to recover benefits under a group life insurance policy issued by Defendant, Life Insurance Company of North America ("LINA"), insuring the life of Plaintiff's wife, Tangela Chapman. Specifically, Plaintiff contends Defendant wrongfully denied his claim to accidental death payments under the terms of the policy issued by Defendant. The action was removed by Defendant to this court on September 26, 2008. (Docket Entry 1.) Pending before the court is Defendant's motion for summary judgment. (Docket Entry 51.) Plaintiff has responded to the motion, and the matter is ripe for disposition. For the reasons that follow, Defendant's motion for summary judgment should be denied.

## I. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the movant is entitled

to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Holland*, 487 F.3d at 213. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. *See Anderson*, 477 U.S. at 248. Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *See id.* at 249. In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### B. ERISA Standard of Review

Both parties here agree that because the Policy did not reserve decision-making discretion for Defendant, this court must review *de novo* Defendant's refusal to pay accidental death benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 269 (4th Cir. 2002) ("If a plan does not clearly grant discretion, the standard of review is de novo.") The *de novo* standard of review allows the court to examine all of the evidence in the record and decide whether or not the plaintiff in a case is entitled to benefits without giving any deference to the plan administrator's decision to deny benefits. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993). In conducting a de novo review, the court should look only at the evidence that was before the Plan administrator or trustee at the times of the benefits determination. *Id.*

2

Moreover, in an ERISA case, the party seeking summary judgment "must negate any material issue of fact" and the "court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996).

Defendant contends that it should be granted summary judgment because it properly determined that Ms. Chapman's death failed to qualify as an "accident" under the Policy and, further, that even if it were considered to be an accident, the policy exclusion for "sickness, disease, bodily or mental infirmity" properly excludes coverage for Ms. Chapman's death.

## II. FACTS[1]

### A. The Insurance Policy

Plaintiff participated in an employee welfare benefit plan ("the Plan") through his employer, Freightliner, LLC ("Freightliner"). Freightliner contracted with Defendant LINA to provide certain insurance benefits in connection with the Plan. As part of his employment benefits, Plaintiff purchased Accidental Death and Dismemberment insurance ("the Policy") with a death benefit in the face amount of Two Hundred Fifty Thousand ($250,000) insuring Plaintiff and his wife, Tangela Chapman. (*See* Policy, AR 00020.)

---

[1] The facts recited herein reflect matters not disputed by the parties. Both parties have submitted all or parts of the "Administrative Record" as exhibits to their briefs in support of or in opposition to the motion for summary judgment. (See Docket Entries 32, 35, 52, 53, 58.) For clarity, parenthetical citations to the Original Administrative Record, attached as exhibits to Defendant's first motion for summary judgment (Docket Entry 32) will use the convention "AR#" (with # referring to the Bates Stamp number on the cited page(s)). References to the Supplemental Administrative Record, attached as exhibits to Docket Entry 52, will be denoted as "SAR#." Several documents appear more than once in both the Administrative Record and the Supplemental Administrative Record. In such instances, the court will endeavor to cite to the first location of the cited documents.

3

The Policy is a Group Accident Policy, as noted on the cover of the Policy, which reads: **"THIS IS A GROUP ACCIDENT ONLY INSURANCE POLICY. IT DOES NOT PAY BENEFITS FOR LOSS COVERED BY SICKNESS."** (AR 00013.) (emphasis in original). Under the Description of Coverages and Benefits section, the Policy contains this language:

**ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS**

**Covered Loss**     We will pay the benefit for any one of the Covered Losses listed in the *Schedule of Benefits*, if the Covered Person suffers a Covered Loss resulting directly and independently of all other causes from a Covered Accident within the applicable time period specified in the *Schedule of Benefits*.

(AR 00033.)

The Policy also contains the following relevant definitions:

**Covered Accident**     A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:
1. occurs while the Covered Person is insured under this Policy;
2. is not contributed to by disease, Sickness, mental or bodily infirmity;
3. is not otherwise excluded under the terms of this Policy.

**Covered Loss**     A loss that is all of the following:
1. the result, directly and independently of all other causes, of a Covered Accident;
2. one of the Covered Losses specified in the *Schedule of Covered Losses*;
3. suffered by the Covered Person within the applicable time period specified in the *Schedule of Benefits*.

4

(AR 00022.)

Finally, as relevant here, the Policy contains the following language with regard to exclusions:

> **COMMON EXCLUSIONS**
>
> > In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury of Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following, unless coverage is specifically provided for by name in the Description of Benefits Section:
> >
> > 6. Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food.

(AR 00027.)

### B. The Insured's Death

On November 29, 2004, Plaintiff's wife, Tangela Chapman, was found dead in her home. Essentially, Ms. Chapman vomited in her sleep and choked on her vomit, resulting in her death. (AR 00408.) The death certificate listed her manner of death as "Accident." (AR 00050.) An autopsy report found that the "[c]ause of death is attributed to respiratory compromise due to acute aspiration of gastric content due to narcotic pain medications effect." (AR 00048.)

Ms. Chapman was under the care of a doctor for migraine headaches and chronic pain. The autopsy report contained a toxicology report which disclosed the presence of oxycodone, fentanyl and quetiapine in Ms. Chapman's blood. (AR 00049.) In an addendum to the autopsy report, the medical examiner concluded that the narcotics "listed above are within therapeutic limits, however may have resulted in obtundation which allowed for respiratory compromise due to acute aspiration of gastric content." (AR 00048.)

5

### C. The Benefits Claim Process

On March 10, 2005, Plaintiff made a timely claim for benefits under the Policy. A LINA claims manager, Carol Jones, was assigned to manage Plaintiff's claim. On August 25, 2005, following a review by LINA, the claim was denied. Ms. Jones sent Plaintiff a letter explaining the denial of his claim:

> Based on the information that we reviewed, we have concluded that Mrs. Chapman did not sustain a loss covered by this policy. We are not contesting [the] fact that Mrs. Chapman's death was ruled an accident by the coroner. However, it appears that her death was due to Mrs. Chapman taking medications on medical advice for medical conditions that included migraine headaches and back pain. In combination with her medical conditions which were associated with vomiting, Mrs. Chapman vomited and was unable to clear her breathing passages. Based on this information Mrs. Chapman's death was due to a combination of natural causes (sickness/disease) and the drugs she was taking (medical treatment). Since as stated above this policy does not pay for a loss which directly or indirectly, in whole or in part, is caused by sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, we have determined that no Dependent Accidental Death Benefits are payable under the provisions of [the Policy.]

(AR 00410.)

The denial letter noted that Plaintiff was entitled to appeal LINA's denial within sixty days. (*Id.*) Ultimately, following a review and analysis by LINA appeals specialist Michael James, LINA denied Plaintiff's administrative appeal and issued its final decision denying Plaintiff's claim for benefits under the Policy.[2] The final decision letter repeated Defendant's

---

[2] Defendant first moved for summary judgment on the grounds that Plaintiff had not exhausted his administrative remedies. (Docket Entry 31.) Following a hearing before the Honorable P. Trevor Sharp on September 2, 2010, the parties entered into a joint stipulation to stay and remand for administrative proceedings. (Docket Entry 43.) On September 15, 2010, the court entered an order granting the stay and remanding the matter to Defendant LINA for further administrative appeal proceedings. (Docket Entry 44.) On July 14, 2011, Judge Sharp entered an order lifting the stay and scheduling dispositive motions. (Docket Entry 40.) The present motion for summary judgment was subsequently filed by Defendant on November 18, 2011. (Docket Entry 51.)

initial rationale and referenced the existing medical reports, including the autopsy and toxicology reports, and medical records from Plaintiff's personal physicians.

In his report, Mr. James noted that the existing medical records showed that Mrs. Chapman "had a medical history of anxiety/depression, panic disorder, mitral valve prolapse, hyperlipidemia, migraine headaches, depression and gestational DM." (SAR 0003). Mr. Jones stated:

> As medical treatment of these medical conditions, Mrs. Chapman was prescribed oxycodone and fentanyl, most recently on 11/18/2004. On 11/29/2004, Mrs. Chapman died from respiratory compromise due to acute aspiration of gastric content due to ingesting her prescribed oxycodone and fentanyl.

(SAR 0004.) Also included in the denial file was the opinion of Dr. Frederick Fochtman, an independent forensic toxicologist, who stated:

> Both fentanyl and oxycodone are opioid drugs that cause CNS depression along with an analgesic effect. Inhibition of the epiglottis/larynx that protects the trachea from aspiration of emesis will also occur due to the depressant effect of these drugs. Mrs. Chapman's autopsy indicated that there was presence of a large amount of digested food material in her bronchi that occluded the airways. The combination of fentanyl and a greater than therapeutic quantity of oxycodone would be consistent with Ms. Chapman'[s] aspiration of emesis that caused her death.
>
> I would be in agreement with the Medical Examiner's cause of death for Ms. Chapman as acute aspiration of gastric content due to narcotic pain medications effect.

(SAR 0016.)

Ms. Chapman's medical records reveal that she was last seen by her primary care physician, Dr. John F. Barr, on November 18, 2004. (AR 00331.) Her chief physical complaint at that visit was right knee pain. Dr. Barr took and x-ray of the knee and ordered

an MRI study. Dr. Barr authorized a refill of Ms. Chapman's oxycodone prescription, which was filled by Ms. Chapman on the same day, November 18. (AR 00221)

There are medical records in the record for the three years prior to Ms. Chapman's death. All of these records reveal various complaints of Ms. Chapman during this time period, including pain, infection, depression, anxiety, and mitral valve prolapse. Dr. Robert Surratt last saw Ms. Chapman as a patient on June 24, 2004, nearly five months before her death. At that visit Ms. Chapman complained of nausea and vomiting, along with a cough, headache and fever, which Dr. Surratt noted to be related to "viral gastroenteritis." (AR 00133.) Prior to this record, the last time Dr. Surratt's notes mentioned headaches and nausea was on October 29, 2003, more than a year prior to Ms. Chapman's death.

## III. ANALYSIS

LINA's denial of benefits was based on two provisions in the Policy. First, LINA argues that Ms. Chapman's death did not result from an injury caused by an "accident." Second, even if Ms. Chapman's death was an accident, LINA argues that the loss is still excluded from coverage based on the specific exclusion for death "directly or indirectly . . . caused by or result[ing] from [s]ickness, disease, bodily or mental infirmity . . . or medical or surgical treatment thereof." (AR 00027). The Court, therefore, must determine whether Defendant's denial of benefits was appropriate under either of these Policy provisions.[3]

---

[3] Plaintiff spends a significant portion of his briefs detailing Defendant's alleged failure to conduct a proper review of Plaintiff's claim for the life insurance benefits and to give Plaintiff's claim a "full and fair review." (See, e.g., Pl. Mem. in Opp. to Mot. for Summ. J. at 3-7, Docket Entry 58.) Given that this court is reviewing the claim denial *de novo*, the review process employed by Defendant is ultimately irrelevant to the disposition of this case.

8

### A. Burdens of Proof

In ERISA cases, the insured bears the initial burden of establishing that the claim falls within the scope of coverage while the insurer has the burden of proving that an exclusion applies. *Jenkins v. Montgomery Industries*, 77 F.3d 740, 743 (4th Cir. 1996).

### B. Covered Accident

As discussed supra, the Policy defines a "Covered Accident" as a "sudden, unforeseeable external event that results, directly and independently of all other causes . . . ." (AR 00022). Under the Policy, "disease, sickness, mental or bodily infirmity" cannot contribute to the loss. (*Id.*) Defendant argues that Ms. Chapman "suffered from medical conditions, migraine headaches and back pain (AR 410) that can cause the vomiting and asphyxiation that resulted in her death" and that further, the medications she was taking "are also known causes of vomiting and other gastrointestinal problems." (Def.'s Reply Br. in Supp. of Mot. Summ. J. at 6, Docket Entry 59.)

The first question for this court on *de novo* review is whether there is a genuine issue of material fact as to the presence of a causal connection between Ms. Chapman's medical conditions and her death. In other words, in order to show that Ms. Chapman's death was a covered accident, Plaintiff must demonstrate first that no unforeseeable external event caused the death, and second, that the death was not caused even in part by a "mental or bodily infirmity."

There is a genuine issue of material fact as to whether Ms. Chapman's death was the result of an unforeseeable external event that was not contributed to by disease, sickness, mental or bodily infirmity. Defendant argues that Ms. Chapman's medical conditions,

9

namely migraine headaches and back pain "can cause the vomiting and asphyxiation that resulted in her death," and, further, that the medications Ms. Chapman was taking "are also known causes of vomiting and other gastrointestinal problems." (Def.'s Brief at 6, Docket Entry 59.) However, the medical evidence in the record is not so clear cut. Conclusory statements such as those offered by Defendant are not enough to support summary judgment. The medical advisor employed by Defendant noted Ms. Chapman's medical conditions and the medications she was taking and then stated: "Thus it is concluded that emesis which precipitated death was the result of a medical condition." (AR 00409.) No doctor was able to pinpoint the reason for Ms. Chapman's vomiting episode, much less directly connect it to her medications or her pain. A review of Ms. Chapman's medical records reveals no evidence that she was suffering from a severe headache in the days before her death, nor is there any evidence in the record that any of the medications taken by Ms. Chapman caused her to be nauseated.

The Fourth Circuit Court of Appeals has held that when policy language limits coverage to losses caused by accidents "directly and independently of all other causes," the existence of a pre-existing condition which contributes to the loss does not bar recovery under an ERISA policy unless the pre-existing condition "substantially contributed to the disability or loss." *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794, 795, 797 (4th Cir. 1990). In *Adkins*, the Fourth Circuit declined to strictly interpret policy language such as that included in the policy here, reasoning that such a construction would nullify the benefits insureds could expect in a large number of instances: "[W]ith such a stringent construction, a claimant would have to be in perfect health at the time of his most recent injury before the

policy would benefit him . . . ." *Id.* The Court went on to adopt the approach followed by the Kentucky Court of Appeals in *Colonial Life & Acc. Ins. Co. v. Weartz*, 636 S.W.2d 891 (Ky. Ct. App. 1982):

> [a] pre-existing infirmity or disease is not to be considered as a cause unless it substantially contributed to the disability or loss . . . . [A] "predisposition" or "susceptibility" to injury, whether it results from congenital weakness or from previous illness or injury, does not necessarily amount to a substantial contributing cause. A mere "relationship" of undetermined degree is not enough. 636 S.W.2d at 954-56.

*Adkins*, 917 F.2d at 797. In a later case, the Fourth Circuit devised a two-step test to determine whether the decedent's death was covered by the accidental death policy: "[F]irst, whether there is a pre-existing disease, disposition or susceptibility to injuries; and second, whether this pre-existing condition, predisposition, or susceptibility substantially contributed to the disability or loss." *Quesinberry*, 987 F.2d at 1028.

Plaintiff's burden, therefore, is to establish, by a preponderance of the evidence that Ms. Chapman's pre-existing conditions, *i.e.*, her migraine headaches and back pain, did not "substantially contribute" to her death. The evidence suggests that the cause of Ms. Chapman's death was asphyxiation from aspiration of vomit. There is no evidence that Ms. Chapman had suffered from vomiting in the past or that her medical conditions caused her to vomit. At best, in the record there is some evidence that her migraine headaches and the medications she was taking could cause vomiting. On this issue, construing all inferences and ambiguities against Defendant, as this court must, there are genuine issues of material fact. Accordingly, summary judgment is not proper.

### C. Covered Exclusion

The holding in *Quesinberry*, however, did not address the second issue presented in this case regarding the exclusion contained in the Policy and whether coverage was excluded because Ms. Chapman's death was indirectly or directly the result of a sickness or medical treatment. In an ERISA case, the burden is on Defendant to show that a loss is not covered based on an exclusion in the policy. As set forth above, the Policy in this case provides an exclusion for a death "which, directly or indirectly, in whole or in part, is caused by or results from . . . sickness, disease, bodily or mental infirmity . . . or medical or surgical treatment thereof . . . ." Applying the same rational set forth in *Quesinberry*, *supra*, the court concludes that there is a genuine issue of material fact as to whether the exclusion applies.

The Tenth Circuit Court of Appeals addressed a similar situation in *Kellogg v. Metropolitan Life Ins. Co., 549 F.3d 818* (10th Cir. 2008). The insured in *Kellogg* suffered a seizure while driving a car which resulted in an accident. The court found that the insured's death was caused by a skull fracture resulting from the accident, not from the seizure. *Id.* at 832. The Court stated, "[T]he Plan does not contain an exclusion for losses due to accidents that were caused by physical illness, but rather excludes only losses caused by physical illness." *Id.* "[C]ourts have long rejected attempts to preclude recovery on the basis that the accident would not have happened but for the insured's illness." *Id.* at 831. The court concluded, "[t]he fact that the policy at issue here excludes losses that were caused *or contributed* to by physical illness does not change this analysis. A reasonable policyholder would understand this language to refer to causes contributing to the death, not to the accident." *Id.* at 832 (emphasis in original). The court found that since the insured's death

resulted from complications from a skull fracture as a result of the car accident, and not the underlying sickness, the policy exclusion did not apply. *Id.*

Similarly, here, Defendants contend that Ms. Chapman's underlying medical conditions and the medical treatment she was receiving were the causes of her death. This argument would be more availing if there was any evidence that Ms. Chapman was abusing the prescription drugs or that she had intentionally overdosed on the medication, or, if there were evidence that the medications (or her conditions) had caused vomiting in the past. The record is devoid of such evidence. Defendant points to several treatment notes where Ms. Chapman complained of *nausea*, not vomiting, and further notes that she was prescribed medication for nausea. There is still, however, a genuine issue of material fact as to any causal connection between these medications, which were found to be in therapeutic levels in Ms. Chapman's system, and her death. *See Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004) ("[C]ausation can be decided on summary judgment only in those instances when there are no causal facts in dispute.") (internal quotation and citation omitted); *Brown & Williamson Tobacco Corp. v. CSX Transp., Inc.*, 882 F. Supp. 511, 515 (E.D.N.C. 1995) ("Generally, the question of causation in a negligence action is a question of fact which is best resolved by the jury's determination).

## IV. CONCLUSION

Defendant has not met its burden to show that there is no genuine issue of material fact as to whether its denial of death benefits under the Policy was proper. Therefore, **IT IS**

**RECOMMENDED** that Defendant's motion for summary judgment (Docket Entry 51) be **DENIED**.

_/s/ Joe L. Webster_
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
March 28, 2013